IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 MAR 31  PM 2: 56

U.S. DISTRICT COURT
N.D. OF ALABAMA

ROSEMARY PULLIE, individually and on behalf of a class of similarly situated persons; ALESHA MAULDIN, individually and on behalf of a class of similarly situated persons,

    Plaintiffs,

v.

CITIMORTGAGE CORPORATION,

    Defendant.

CASE NO. CV 01-B-1832-S

ENTERED
MAR 3 1 2003

## MEMORANDUM OPINION

Currently before the court is a Motion to Dismiss, filed by defendant CitiMortgage Corporation ("CitiMortgage"). Plaintiffs file this lawsuit, which is putative nationwide class action, challenging payments made by CitiMortgage to mortgage brokers of sums frequently called "yield spread premiums." Plaintiffs' Complaint contains two counts. In Count I, plaintiffs allege that CitiMortgage breached the mortgage contracts each had with CitiMortgage when CitiMortgage paid part of the brokers' compensation. In Count II, plaintiffs allege that CitiMortgage violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), because the yield spread premium payments were allegedly improper referral fees, made illegal under RESPA Section 8(a), 12 U.S.C. § 2607(a), or improper split fees, made illegal under RESPA Section 8(b), 12 U.S.C. § 2607(b). Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss is due to be granted in part and denied in part.

For the reasons stated below, the court is of the opinion that the motion is due to be granted as to Count I and the claim in Count II under RESPA Section 8(b). The motion as to the claim in Count II under RESPA Section 8(a) is due to be denied.

## I. FACTUAL SUMMARY

The suit has been brought in the names of two borrowers, Rosemary Pulley ("Pulley") and Alesha Mauldin ("Mauldin"), to whom CitiMortgage made home mortgage loans.[1] Each loan was made under the Federal Housing Administration ("FHA") program, which provides government-backed mortgage default insurance to lenders, thereby encouraging lenders to make loans to borrowers who are able to put up only a small amount of cash for a down payment.

Plaintiffs assert that CitiMortgage breached the terms of plaintiffs' mortgages when it "charged, collected, and/or exchanged" certain fees in connection with the loans. (Compl. ¶ 39.) Although they list a number of the charges imposed, the only fees for which relief is sought by plaintiffs are the premium payments paid in each loan, a processing fee on each loan, and an underwriting fee on each loan. Specifically, Mauldin challenges the $1,319.31 yield spread premium (labeled "YIELD SPR PREM") paid by CitiMortgage to her broker, Imperial Mortgage Finance Corporation ("Imperial"), a $250 processing fee paid to the broker, and a $375 underwriting fee paid to CitiMortgage. (Compl. ¶ 13.) Pulley challenges the $2,361.26 yield spread premium (labeled "SER REL PREM") paid by CitiMortgage to her broker, Ally Mac Mortgage Services ("Ally Mac"), a $200 processing fee paid to the broker, and a $200 underwriting fee paid to the broker. (Compl. ¶ 21.) Neither Pulley nor Mauldin paid any of

---

[1] Pulley is a resident of Baltimore, Maryland who obtained her loan from a Maryland broker. Her name is misspelled in the caption of the Complaint.

these fees at loan closing. Rather, the premiums were paid by CitiMortgage and the processing and underwriting fees were paid by the sellers of the homes the plaintiff was purchasing.

Plaintiffs allege that the payment of the yield spread premium by CitiMortgage in each instance violated a supposed 1% cap imposed by FHA program rules on total broker compensation. (Compl. ¶¶ 33-34.) The subject FHA regulation states, in relevant part, that:

> The mortgagee may collect from the mortgagor the following charges, fees or discounts . . . (2) a charge to compensate the mortgagee for expenses incurred in originating the loan, the charge not to exceed (1) $20 dollars or one percent of the original amount of the mortgage . . . whichever is the greater . . .

24 C.F.R. § 203.27(a). The premiums are alleged to exceed 1% of the loan amount in each instance, totaling 2.75% in the Mauldin loan and 3.75% in the Pulley loan. (Compl. ¶¶ 15, 23.) Plaintiffs concede that they cannot sue to enforce any alleged 1% cap on broker compensation, because there is no private right of action to enforce FHA rules. *See, e.g., Roberts v. Cameron-Brown Co.*, 556 F.2d 356 (5th Cir. 1977); *Baker v. Northland Mortgage Co.*, 344 F. Supp. 1385 (N.D. Ill. 1972). Plaintiffs therefore resort to a theory of contract liability, alleging that these rules are incorporated into their mortgages, and a theory that by paying these allegedly-improper fees CitiMortgage violated RESPA. (Compl. ¶¶ 38-39, 44.)

Plaintiffs assert that the processing and underwriting fees separately violate FHA rules, and therefore breached the contract, because such amounts allegedly may never be collected. (Compl. ¶¶ 38-39.) There is no allegation that these miscellaneous fees violated RESPA, and thus there is no claim asserted about these fees in Count II.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss, the court must accept the allegations of the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.*; *see also Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976).

## III. DISCUSSION

### A. Count I – Breach of Contract

Plaintiffs' breach of contract claims fail for a very simple reason – the mortgages at issue do not prohibit the conduct alleged. Specifically, no provision of the mortgages prevent CitiMortgage from paying a mortgage broker a yield spread premium, in any amount, or prevent the seller of the property from paying any fees in connection with the loan closing.

Pulley and Mauldin rest their claim entirely on the mortgage each executed. (Compl. ¶ 37.) Although plaintiffs did not attach those contracts to the Complaint, the court can and should consider them and their terms. When an essential document, such as the operative contract, is one whose terms plaintiffs put at issue by their pleading, that document may be considered in deciding a motion to dismiss. *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 923 n.1 (11th Cir. 1991); *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997), *aff'd*, 140 F.2d 1043 (11th Cir. 1998). The Mortgages were attached as exhibits to

defendant's brief.[2] Plaintiffs did not dispute their authenticity, and did not object to the court's consideration of the Mortgages in connection with this motion.

Although plaintiffs did ask the court to treat their characterization of the contents of the Mortgages as true, the court will decide the motion based on the terms of the Mortgages, not how either party describes their contents. It is well-established that under Fed. R. Civ. P. 12(b)(6) a court can dismiss a breach of contract claim at the beginning of a case by construing the terms of the written agreement. *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1040-41 (11th Cir. 1986); *North Ga. Petroleum Co. v. Federated Mutual Ins. Co.*, 68 F. Supp. 2d 1321, 1324 (N.D. Ga. 1999). If the contract terms are not ambiguous, the contract can and should be construed as a matter of law. *Lampliter Dinner Theater, Inc.*, 792 F.2d at 1040; *Deerman*, 955 F. Supp. at 1397; *Marriott Int'l, Inc. v. deCelle*, 722 So. 2d 760, 763 (Ala. 1998). Plaintiffs do not argue that the Mortgages are ambiguous, and the court finds that the Mortgages are not ambiguous, at least in relevant part.

The breach of the Mortgages that plaintiffs allege is that CitiMortgage paid yield spread premiums to Pulley's and to Mauldin's mortgage broker. (Compl. ¶ 15 ("CITIMORTGAGE paid Imperial [Mauldin's mortgage broker] a 'YIELD SPREAD' in the amount of $1,319.31"); *id.* ¶ 23 ("CITIMORTGAGE paid Ally Mac [Pulley's mortgage broker] a 'SER REL PREM' in the amount of $2,361.26.").) Plaintiffs fail to state a breach of contract claim because the Mortgages simply do not prohibit or restrict in any way lender payments made to mortgage brokers. Indeed, the term "mortgage broker" does not appear anywhere in either Mortgage. Courts must enforce unambiguous, lawful contracts as written. *Thompson Tractor Co. v. Fair*

---

[2]The Pulley contract is actually a Deed of Trust, the Maryland equivalent to a mortgage.

5

*Contracting Co*, 757 So.2d 396, 398 (Ala. 2000); *P & S Business, Inc. v. South Central Bell Telephone Co.*, 466 So.2d 928, 931 (Ala. 1985); *Pope v. Bethesda Health Center, Inc.*, 813 F.2d 1306, 1308 (4th Cir. 1987); *Jones v. Hubbard*, 356 Md. 513, 533, 740 A.2d 1004, 1015 (Md. 1999).[3] Because the subject contracts do not govern the payments a mortgage broker can receive, CitiMortgage is entitled to have Count I dismissed.

Recognizing that the Mortgages do not limit mortgage broker compensation expressly, Pulley and Mauldin contend that FHA program rules that allegedly limit broker compensation from any source are incorporated into the Mortgages. (Compl. ¶¶ 27, 28, 33.) Plaintiffs' claim that such incorporation was accomplished in paragraph 8 of each Mortgage. (Compl. ¶ 37.) That paragraph provides: "Lender may collect fees and charges authorized by the Secretary." (Mortgages ¶ 8.)[4]

Paragraph 8 of the Mortgages does not incorporate any supposed HUD restriction on premium payments to brokers. Here, the obvious reach of paragraph 8 of the Mortgages is to restrict only what CitiMortgage, the lender, "may collect." (*See* Mortgages at 1 (defining CitiMortgage as "Lender").) The Complaint alleges that the FHA rules were violated, and the contract breached, because CitiMortgage *paid* the brokers (Imperial and Ally Mac) premiums, not that CitiMortgage *collected* the premiums. Even the opposition plaintiffs filed to the motion to dismiss does not refer to the premiums as amounts that CitiMortgage collected:

---

[3] Both Alabama law and Maryland law are cited because the Pulley contract specifies that the Mortgage would be interpreted under Maryland (and federal) law and the Mauldin contract specifies that the Mortgage would be interpreted by Alabama (and federal) law.

[4] The reference to the secretary is to the Secretary of the Department of Housing and Urban Development ("HUD"), the agency that administers the FHA program.

6

> Ms. Mauldin was assessed at least 1% of the loan's value for the origination . . . . Ms. Mauldin's HUD-1 settlement statement also reflects that [CITIMORTGAGE] paid Ms. Mauldin's broker a Yield Spread Premium . . . .
>
> [CITIMORTGAGE] and the [the broker] charged and collected from Ms. Pulley a $615.82 "Loan Origination Fee," a 1% ($692.97) "Loan Discount," a $200 "Processing Fee" and a $200 "Underwriting Fee." Compl. ¶ 21. In addition to the "direct" fees, Ms. Pulley's broker was also paid a Yield Spread Premium . . . .

(Pls.' Br. at 4.) In contrast, paragraph 8 only applies to what a "Lender may collect." Assuming FHA rules restrict premium payments, those rules cannot be incorporated through paragraph 8 of the Mortgages, and plaintiffs' contention that the payments breached the Mortgages must be dismissed.

Plaintiffs argue that the term "Lender," as used in paragraph 8, should be construed to include the mortgage broker. They rely for this proposed construction on various FHA rules and guidelines that allegedly include mortgage brokers within the scope of certain prohibitions or rules applicable to lenders. However, the word "Lender" is a defined term in the Mortgage: Lender is CitiMortgage, Inc. (Mortgages at 1.) FHA definitions of terms are not included in the Mortgages. Therefore, according to the terms of the Mortgages, CitiMortgage is the only "Lender."

Defendant claims that, for an additional reason, CitiMortgage must be the only entity to whom the term "Lender" refers in the Mortgages. The Mortgages are security instruments that give rights to the entity that loaned Pulley and Mauldin money, and that is owed a repayment obligation from each. For instance, the Mortgages provide that the "Lender" is secured the repayment of the principal and interest loaned. (Mortgages ¶ 7.) The Mortgages also vest "Lender" with the right to take certain actions, including to enter on the property and to foreclose

on the property. (Mortgages ¶¶ 9, 18.) There can only be one "Lender" here, and it must be CitiMortgage. A mortgage broker cannot be within the scope of the term "Lender" because the broker is not owed any sums on the loan, and would never have any rights as a secured party.

The word "collect" is also unambiguous, and, given common usage, is not to be confused with the word "paid." *See Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1360 (11th Cir. 1988) (stating that courts should give words their plain and ordinary meaning). "Collect" is a common word with a common meaning. "To collect" is "to claim as due and receive payment for." *Merriam Webster's Collegiate Dictionary* 225 (10th ed. 1993). It does not mean "paid;" that word is defined as "marked by receipt of payment." *Id.* 835.

In opposing the motion, plaintiffs argued in the alternative that paragraph 8 was breached because CitiMortgage effectively collected the yield spread premium after closing, when CitiMortgage collected interest on the loans. This argument is unpersuasive. As an initial matter, plaintiffs did not allege in their Complaint that the collection of interest breached the Mortgages, and they do not seek the recovery of interest. Notably, both Pulley and Mauldin signed promissory notes that required those interest payments and those payments were secured by the Mortgages.

The theory also in unsupported by the language of the Mortgages. Paragraph 8 does not apply to loan interest. That provision makes no mention of interest at all; it refers only to "fees and charges." These are different things. Interest is specifically mentioned in the Mortgage as an item separate and distinct from "fees and charges." (*See* Mortgages ¶ 1 ("Payment of Principal, Interest, and Late Charge"); *id.* ¶ 3 (stating that payments are applied, *inter alia*, to "interest" third, "late charges," fifth). As "interest," "fees" and "charges" are discussed separately within

the same document, interest cannot be read as incorporated into the terms "fees and charges". *Lost Valley Timber, Inc. v. Power City Const. Inc.,* 809 F.2d 590, 593 (9th Cir. 1987); A. Farnsworth, *Contracts* 496 (1982).

In addition, although plaintiffs contend that paragraph 8 applies to interest charges, HUD does not regulate how much interest a lender may charge in the FHA program. *See* 24 C.F.R. § 203.20(a) (stating interest rates are matter of agreement between borrower and lender). That is, the Secretary does not actually "authorize" (or fail to "authorize") *any* interest amounts - though he does have rules on "fees and charges." 24 C.F.R. § 203.552. Paragraph 8 cannot be read to apply to interest at all.

Plaintiffs' contract theory fails for a number of other, independent reasons as well. The court agrees with CitiMortgage that paragraph 8 is not a prohibition at all. Rather, it vests CitiMortgage with rights and creates obligations on Pulley and Mauldin, *i.e.* CitiMortgage has the right to collect fees during the repayment of the loan and Pulley and Mauldin must pay them. This paragraph does not use prohibitory or limiting language, such as that CitiMortgage "may collect *only* fees and charges authorized" or even that CitiMortgage "may collect *such* fees and charges authorized." In contrast, the next paragraph of the Mortgages refers to FHA program rules too, but in a way that expressly restricts CitiMortgage's conduct. (Mortgages ¶ 9(a) (stating loan acceleration permitted after default "except as limited by regulations issued by the Secretary"); *id.* ¶ 9(d) (stating foreclosure not authorized "if not permitted by regulations of the Secretary").) The different ways in which FHA rules are referenced is significant indication that paragraph 8 is not meant to restrict CitiMortgage. Paragraph 8 should be interpreted in its plain

meaning, and with the assumption that if the term was meant to restrict CitiMortgage in what it could collect then the contracts would have said so.

The court also finds that paragraph 8 does not sweep into the Mortgages every FHA statute, rule, regulation, guideline, handbook or informal directive that may limit or address what CitiMortgage can do in originating or administering an FHA mortgage loan. When federal rules are incorporated into a contract, only so much of the regulation as is specifically mentioned or referenced with the contract should be included. *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988); *Kennedy Heights Apartments, Ltd. v. United States*, 48 Fed. Cl. 574, 579 (Fed. Cl. 2001). Paragraph 8 is not specific or definitive enough to be interpreted sensibly to encompass all FHA rules; FHA rules in the Code of Federal Regulations encompass over 400 pages. *See* 24 C.F.R. Parts 200-266.

Plaintiffs' theory of contract recovery also fails for a different, and perhaps even more fundamental reason. The Mortgages are not contracts that govern what the parties can and cannot do in connection with the origination of the loan. Rather, the Mortgages are security instruments, and must be construed in line with their primary purpose of providing protection to the lender during the repayment period. *Pacific Insurance Co. v. Wilbanks*, 214 So.2d 279, 283 (Ala. 1963) (stating contracts should be interpreted consistent with their purpose); *Heat & Power Corp. v. Air Products & Chemicals, Inc.*, 578 A.2d 1202, 1208 (Md. 1990) (same). The terms of the Mortgages all concern future activities - primarily relating to loan payment obligations and lender remedies in the event of default - not origination. The Mortgages grant CitiMortgage additional remedies in the event Pulley or Mauldin fail to perform their obligations under their respective Notes. (Mortgages ¶¶ 1-3, 7, 9, 18.) The Mortgages grant other ordinary and

10

necessary rights to a secured party, including the ability to act affirmatively when necessary to protect its interest, (*id.* ¶ 7), and to be paid condemnation and insurance recoveries, (*id.* ¶¶ 4, 6). To the extent the Mortgages concern payments, they are also forward-looking in identifying additional sums that the borrower must include in each monthly payment, (*id.* ¶ 2), and how these payments are to be applied to the borrower's account, (*id.* ¶ 3).

In light of these purposes, it is evident that paragraph 8 of the Mortgages, stating that the lender may collect fees authorized by the Secretary, only addresses fees and charges after loan settlement. Paragraph 8 is limited in scope to the Lender - the only party to whom fees or charges could be owing when a loan is in repayment. In contrast, at origination numerous third parties can and do collect fees and charges, which are sometimes substantial.[5]

That paragraph 8 refers to loan administration fees, not loan origination fees, is further supported by the fact that the HUD has at least one FHA regulation concerning the "fees and charges" that can be collected by the mortgagee during the servicing of the loan. 24 C.F.R. § 203.552 ("Fees and Charges After Endorsement"). These regulations list fourteen such "fees or charges" including late charges, charges for processing returned checks, fees for processing a change of ownership, escrow charges, and fees incurred to preserve the property. No fees or charges incurred in connection with the origination of the loan are listed in 24 C.F.R. § 203.552. In fact, some of the very charges listed in this regulation are also specifically mentioned in the Mortgage. (Mortgages ¶ 1 (stating late charges included in payments required); *id.* ¶ 2 (stating

---

[5]For example, total settlement charges paid by Pulley at closing exceeded $5,500. Only $14 of that was collected by CitiMortgage. This amount is exclusive of the premium, which, of course, was not collected by CitiMortgage, it was paid by CitiMortgage.

escrow charges to be paid); *id.* ¶ 3 (stating when payments applied to late charges); *id.* ¶ 7 (stating lender can collect fees incurred to preserve rights in the property).

In sum, the court finds that CitiMortgage's payment of yield spread premiums to the brokers did not breach the Mortgages. That claim in Count I must be dismissed.

In addition to their claims concerning yield spread premiums paid to brokers, plaintiffs also contend in Count I that CitiMortgage breached the contracts because, in both transactions, the seller of the property paid a processing fee and an underwriting fee. (Compl. ¶¶ 29, 38.) Plaintiffs contend that processing fees and underwriting fees are prohibited under the FHA program. (*Id.*) These claims are also due to be dismissed. The terms of the Mortgages do not apply to the seller of the property; indeed, the seller is not even a party to the contract. Paragraph 8 of the Mortgages is limited in scope to amounts the lender may collect from the borrower. (Mortgages ¶ 8.) Because the Mortgages do not govern the acts of the seller, plaintiffs have stated no claim concerning seller-paid fees. *Thompson Tractor,* 757 So.2d at 398; *P & S Business, Inc.*, 466 So.2d at 931.

**B. Count II – RESPA Claims**

As noted, plaintiffs put forward two RESPA theories. First, plaintiffs contend that the yield spread premium payments constituted prohibited referral fees in violation of Section 8(a) of RESPA, 12 U.S.C. § 2607(a). (Compl. ¶ 44.) Second, plaintiffs contend that the payments to the mortgage brokers constituted an impermissible splitting of settlement service fee, in violation of Section 8(b) of RESPA, 12 U.S.C. § 2607(b). (Compl. ¶ 45.)

1. **RESPA § 8(a) Claim**.

Plaintiffs assert that the yield spread premiums CitiMortgage paid to Imperial and Ally Mac were referrals, outlawed in RESPA Section 8(a), 12 U.S.C. § 2607(a), which provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

RESPA § 8(a) "is violated if (1) a payment of a thing of value is (2) made pursuant to an agreement to refer settlement business and (3) a referral actually occurs." *Culpepper v. Inland Mort. Corp.*, 132 F.3d 692, 695-696 (11th Cir. 1998). Payments for goods and services are unlawful referrals or kickbacks under § 8(a) only when they are not "reasonably related to the total set of goods or facilities actually furnished or services performed." *Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b)*, 66 Fed Reg. 53052, 53055 (Oct. 18, 2001) (hereinafter "*2001 SOP*"); *see also Heimmermann v. First Union Mort. Corp.*, 305 F.3d 1257, 1263-64 (11th Cir. 2002) (citing *2001 SOP* for this proposition).[6]

Imperial and Ally Mac, the brokers that originated plaintiffs' loans, received yield spread premium payments from CitiMortgage, who funded the loans. In the Complaint, plaintiffs allege that the yield spread premiums were paid "in exchange for and pursuant to" an agreement to refer plaintiffs' loans. (Compl. ¶¶ 16, 24). It is certainly possible that, if these allegations are proven,

---

[6]HUD issued the *2001 SOP*, interpreting RESPA §§ 8(a) and 8(b). In *Heimmermann*, the Eleventh Circuit found that courts should give deference to HUD's interpretations of § 8(a) in *2001 SOP*. 305 F.3d at 1263.

plaintiffs could also prove a set of facts establishing that the yield spread premiums caused or "affirmatively influenced" the brokers to refer the loan to CitiMortgage. *See* 24 C.F.R. § 3500.14(f)(1). Therefore, plaintiffs' allegations satisfy the elements of their § 8(a) claims, as set forth in *Culpepper*.

Furthermore, if, as the plaintiffs allege, CitiMortgage calculated the amount of the yield spread premiums based on the difference, or spread, between the interest rate on plaintiffs' loans and the "par rate," without regard to the value or amount of services they provided, (Compl. ¶ 26), it is conceivable that the total compensation paid to Imperial and to Ally Mac was not reasonably related to the services they provided, thus satisfying the additional criteria in the *2001 SOP*. Therefore, plaintiffs state claims for violation of § 8(a).

**2. RESPA § 8(b) Claim**

Plaintiffs claim that defendant's payments to the mortgage brokers, Imperial and Ally Mac, violated RESPA § 8(b). Section 8(b) provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

Plaintiffs assert that if the court extends deference to the *2001 SOP*, then they have stated claims for violations of RESPA § 8(b). (Pls.' Am. Resp. ¶ 5.) In the *2001 SOP*, the HUD stated:

> The Secretary [of HUD] . . . interprets Section 8(b) of RESPA to prohibit all unearned fees, including, but not limited to, cases where: (1) Two or more persons split a fee for settlement services, any portion of which is unearned; or (2) one settlement service provider marks-up the cost of the services performed or goods provided by another settlement service provider without providing additional actual, necessary, and distinct services, goods, or facilities to justify the additional

>charge; or (3) one service provider charges the consumer a fee where no, nominal, or duplicative work is done, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

*2001 SOP*, 66 Fed. Reg. at 53059. Thus, HUD interprets the provision as prohibiting a broad range of conduct.

Several circuit courts of appeal have held that HUD's interpretation of the statute is not entitled to deference, finding instead, that according to the plain language of the statute, RESPA § 8(b) prohibits a far more limited range of conduct. In *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 (4th Cir. 2002), for example, the court found that § 8(b) prohibits a settlement service provider from imposing an excessive or unearned fee, but only where "'a portion' or 'percentage' of th[at] overcharge is [then] kicked back to or 'split' with a third party," 291 F.3d at 265; *see also Huag v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) (stating that "Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute"); *Echevarria v. Chicago Title & Trust*, 256 F.3d 623, 626 (7th Cir. 2001) (pre-*2001 SOP* case affirming dismissal of § 8(b) claim where plaintiffs failed to allege that two parties actually split a fee). The court in *Boulware* also stated that "[a]n overcharge or unearned fee must be present in order for § 8(b) to apply because the charge must be one 'other than for services actually performed.'" 291 F.3d at 265 n.3.

Plaintiffs' sole allegation on this issue consists of the following:

>Defendant's payments to Imperial and Ally Mac also constituted violations of § 8(b) of RESPA, 12 U.S.C. § 2607(b), which prohibits the splitting of fees in connection with the origination of federally-related mortgage loans.

15

(Compl. ¶ 45.) Even giving deference to the *2001 SOP*'s expansive interpretation of § 8(b), however, plaintiffs do not state claims for violations of that section.[7] Plaintiffs do not allege that CitiMortgage charged them an excessive fee, or a fee for services not provided by CitiMortgage; the yield spread premiums were paid by CitiMortgage, not plaintiffs. The second or third examples cited by HUD in the *2001 SOP* require either fees or charges paid by the borrower. Absent such allegations, plaintiffs cannot establish that CitiMortgage, the lender, violated § 8(b).

Plaintiffs' § 8(b) claim is potentially saved from dismissal if they have alleged that "[t]wo or more persons split a fee for settlement services, any portion of which is unearned,"[8] which is the first example cited by HUD above. *See 2001 SOP*, 66 Fed. Reg. at 53059. Plaintiffs, however, do not allege that any fee they paid to CitiMortgage was excessive or unearned, much less that CitiMortgage split such a fee with either of plaintiffs' mortgage brokers, Imperial and Ally Mac. Although plaintiffs allege that CitiMortgage paid the brokers yield spread premiums, (Comp. ¶¶ 13, 21), this allegation, standing alone, fails to demonstrate that in reality these payments were funded from specific, excessive or unearned fees collected from plaintiffs by

---

[7]As stated above, the Eleventh Circuit has ruled that courts should give deference to the *2001 SOP*. *See Heimmermann*, 305 F.3d at 1263. The first of several considerations cited by the *Heimmermann* court provides that "[n]o deference is to be given to an agency interpretation that is at odds with the plain meaning of the statute being interpreted." *Id.* at 1261. Although the holding appears very broad upon first reading – "the 2001 SOP is entitled to *Cheveron* deference," *id.* at 1263 – the court evaluated only that part of the *2001 SOP* interpreting RESPA § 8(a). Given this court's ultimate ruling, that plaintiffs fail to state a claim under § 8(b) as interpreted by the HUD in the *2001 SOP* or as interpreted by courts construing the statutory section more narrowly, the court will not determine whether the *2001 SOP* is "at odds" with the plain meaning of § 8(b), or whether other considerations also suggest that the *2001 SOP* is not entitled to deference.

[8]The courts construing § 8(b) narrowly would hold that this conduct, if proven, constitutes a violation of RESPA. *See supra* p. 15.

CitiMortgage. Plaintiffs, therefore, fail to state a claim against CitiMortgage for violation of § 8(b).

As a final point, the list of conduct in *2001 SOP* that, if alleged, would potentially state a claim for violation of § 8(b) is meant to be illustrative, not exhaustive. *See 2001 SOP*, 66 Fed. Reg. at 59059. However, plaintiffs offer no additional justification to support a finding that CitiMortgage violated § 8(b).

Therefore, for the foregoing reasons, plaintiffs' § 8(b) claims are due to be dismissed.

### III. CONCLUSION

Count I will be dismissed. Count II will be dismissed to the extent it attempts to state a claim under RESPA § 8(b), 12 U.S.C. § 2607(b). Defendant's motion to dismiss will otherwise be denied. An Order in accordance with the Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this __31st__ day of March, 2003.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
United States District Judge

17